# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TYRONE DAVIS SMITH,**

     **Petitioner,**

  -v-

              **Case No. 09-C-725**

**LARRY JENKINS,**

     **Respondent.**

---

## DECISION AND ORDER

---

   The pro se Petitioner, Tyrone Davis Smith ("Smith"), who is currently serving a state sentence in Fox Lake Correctional Institution, petitions this Court for a writ of a habeas corpus pursuant to 28 U.S.C. § 2254. Smith challenges his March 22, 2007, conviction by the Circuit Court for Milwaukee County, Wisconsin, following a jury trial, for the first-degree sexual assault of a child, Sasha T., in violation of Wis. Stat. § 948.02(1). On May 15, 2007, Smith was sentenced to ten years of imprisonment and five years of extended supervision.

   United States Magistrate Judge Aaron E. Goodstein initially presided over this matter. The order issued pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts identifies the following three grounds for habeas corpus relief that Smith raises: (1) a detective who interviewed Sasha T. improperly suggested terms to her; (2) Smith's attorney was ineffective because he failed to retain an expert to present evidence

regarding appropriate interviewing techniques and the consequences of suggestive interviews with child victims; and (3) the jury was not permitted to consider a lesser charge. (Magistrate Judge's Order on the Petition for a Writ of Habeas Corpus, August 12, 2009, at 1-2.) The Magistrate Judge directed the Respondent, Larry Jenkins ("Jenkins"), the Warden of Fox Lake Correctional Institute to file an answer.

Because the parties declined to consent to the jurisdiction of the Magistrate Judge, this matter was randomly assigned to this Court. Smith filed a motion for bond pending appeal. That motion as well as the issues presented by his petition are addressed in this Decision and Order.

### *Motion for Bond Pending Appeal*

Smith's motion for release on bond pending appeal relies on *United States ex rel. Sampson v. Brewer*, 593 F.2d 798, 799 (7th Cir. 1979) and *United States ex rel. Price v. Lane*, 723 F. Supp. 1279, 1281 (C. D. Ill. 1989). Both cases involved habeas corpus review of state court determinations that denied bail pending appeal.

Smith's petition does not raise an issue regarding the state court's denial of bail on appeal. Consequently, the cited cases do not present a basis for his release on an appeal bond and, therefore, the motion is denied.

### *SMITH'S PETITION FOR A WRIT OF HABEAS CORPUS*

This Court's review of Smith's petition is subject to the standards established by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). *See* 28 U.S.C.

2

§ 2254. Under the AEDPA, state court factual findings that are reasonably based on the record are presumed correct, and a petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 845 (7th Cir. 2002).

The following summary of the facts is largely adopted from the Wisconsin Court of Appeals' factual findings in its unpublished opinion addressing Smith's pro se appeal from his conviction, orders denying his post-conviction motion, and his motion for reconsideration, *see State v. Smith*, 768 N.W.2d 62 (Wis. Ct. App. Mar. 10, 2009) (Table)(unpublished). Smith does not challenge the court of appeals' factual findings.

## *Background*

The State of Wisconsin charged Smith with the first-degree sexual assault of a child. The amended criminal complaint alleged that, on or about November 23, 2006, Smith had sexual contact with Sasha T., a person who had not attained the age of 13 years, in violation of Wis. Stat. § 948.02(1).[1] The charges were tried to a jury.

---

[1] The Wisconsin Court of Appeals observed that the complaint and information referenced § 948.02(1) of the Wisconsin Statutes, which were found in the 2003-04 version of the statutes. *Smith*, 768 N.W.2d at * 1, n.1. That statute provided: "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony." However, the court noted that, effective on June 6, 2006, § 948.02 of the Wisconsin Statutes was amended. *Id.* (citing 2005 Wis. Act 430, §§ 3-4; 2005 Wis. Act 437, §§ 1-2, 7.) Thus, because Smith's alleged offense occurred in November 2006, the court indicated that that the information and complaint should have referenced Wis. Stat. § 948.02(1)(e) (2003-04) (as affected by 2005 Wis. Act 430). *Id.* However, the appellate court stated that the prosecution's failure to cite the amended statutory subsection had not prejudiced Smith. *Id.*

At trial, the prosecution presented three witnesses: Sasha T.; her father, Hal Smith ("Hal S."); and City of Milwaukee Police Department ("MPD") Detective Phillip Simmert ("Simmert").

Sasha T. testified that her date of birth is May 3, 1995. She testified that, during the night of November 23, 2006, she awakened and realized that Smith was lying on top of her rubbing his penis against her clothed buttocks. Sasha T. stated that Smith was "going up and down," and she described his penis as feeling like "a hard banana." 768 N.W. 2d at * 1. Sasha T. told the jury that she immediately woke her father, Hal S., and told him that Smith had tried to rape her. *Id*.

Hal S. testified that, during the night of November 23, 2006, Sasha T. woke him "screaming and crying," and that she accused Smith of attempted rape. *Id*. Hal S. called the police after observing that Smith's pants were unzipped.

Smith cross-examined both Sasha T. and Hal S. about their prior inconsistent statements regarding the incident. Additionally, Smith demonstrated some discrepancies between Sasha T.'s recollection of events and Hal S.'s recollection of the events.

Simmert testified that, on November 23, 2006, while he was on duty he interviewed Sasha T. in his squad car as part of his investigation of her assault accusation. Although he acknowledged that child victims of sexual assault are sometimes interviewed at the Sexual Assault Treatment Center at Children's Hospital, Simmert testified that he did not believe that he needed to use the treatment center to interview Sasha T. He explained that if a child is

4

comfortable speaking with him, there is no reason to take the child to the treatment center or to arrange for a recorded interview with specially trained detectives. Simmert testified that the MPD does not have a policy or protocol dictating when a child should be interviewed at the treatment center.

Smith elected not to testify. The defense rested without presenting any witnesses.

In the prosecution's closing argument, it asserted that Sasha T.'s accusation was credible. The prosecution emphasized the testimony that it believed corroborated the accusation. Smith's closing argument highlighted the discrepancies and inconsistencies in the witnesses' testimony.

During the jury's deliberations, it submitted two questions. One question was whether the charge could be "altered to a lesser degree," and the second question was whether "misconduct" and "assault" are different. *Id*. The parties and the trial court agreed to respond that "the only charge before you is the charge contained in the information. You must make your decision based upon the evidence and the law the court has given to you." *Id*.

The jury returned with a signed guilty verdict. In response to the circuit court's request for the "not guilty" verdict form, the foreperson explained that she had thrown it away. The court polled the jury. Each juror confirmed that he or she had voted to find Smith guilty.

The circuit court denied Smith's motion for judgment notwithstanding the verdict, and entered a judgment on the verdict. At sentencing, the circuit court imposed a 15-year term sentence, bifurcated as ten years of initial confinement and five years of extended supervision.

Smith moved for postconviction relief. The circuit court denied the motion without a hearing, and then denied Smith's motion for reconsideration. Smith then appealed pro se to the Wisconsin Court of Appeals which affirmed his conviction. The Wisconsin Supreme Court denied Smith's petition for review of that decision.

## *Applicable Law*

The AEDPA limits a federal court's ability to grant a writ of habeas corpus to a state prisoner whose claims were adjudicated on the merits in state court. *See* 28 U.S.C. § 2254(d)(1). A habeas petitioner is only entitled to relief from a state court decision denying him post-conviction relief if that decision: 1) was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or 2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006).

A state court decision is "contrary to" clearly established federal law if it differs from relevant United States Supreme Court precedent because the decision applies a contradictory rule or reaches a different result on materially indistinguishable facts. *Id.* "A state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 407 (2000)). The state court's application of federal law must have been

both incorrect and unreasonable, "that is, lying well outside the boundaries of permissible differences of opinion." *Id.* (quoting *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008)).

### *Simmert's Interview of Sasha T.*

As his first ground for relief, Smith contends that he is being held in violation of the Fourth and Fourteenth Amendments based on Simmert's testimony regarding his interview of Sasha T. Jenkins responds that it is unclear how the Fourth or Fourteenth Amendment rights have any bearing on Smith's claims and the only legal framework that makes sense for analyzing the allegations underlying grounds one and two is under a Sixth Amendment ineffective assistance of counsel challenge. In reply, Smith asserts that Simmert failed to follow the norm or the protocol in order obtain evidence from Sasha T. and, thereby, violated Smith's Fourth and Fourteenth Amendment rights to a fundamentally fair trial upon sufficient credible evidence. (Pet'r's Reply to Resp't's Answer ("Pet'r's Reply") 3.) Smith states that Simmert "crossed the line of legality; he knew he was not trained in 'suggestive techniques' and how they are used in interviewing alleged sexual[ly] assaulted children to eschew suggestibility." (*Id.*) In essence, Smith claims that Sasha's T.'s statements to Simmert immediately following the incident were unduly influenced by suggestive questioning.

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." In some circumstances, "the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and

effects.'" *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). "Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies." *Id.* Based on the factual context of the issues that Smith raised before the state court, Smith has not posited an arguable violation of the Fourth Amendment. Sasha T.'s statements regarding Smith were not obtained, directly or indirectly, as the result of a violation of Smith's Fourth Amendment rights.

However, the Fourteenth Amendment is arguably implicated. The Fourteenth Amendment provides, in pertinent part, that "[n]or shall any State deprive any person of life, liberty, or property, without due process of law." It is well established that denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941). Thus, the Court will consider Smith's claim regarding Simmert's interview of Sasha T. under the Fourteenth Amendment

*Idaho v. Wright*, 497 U.S. 805, 826-27 (1990), cited by Smith before this Court, involved a Sixth Amendment Confrontation Clause challenge.[2] The issue in *Wright* was whether

---

[2]The Sixth Amendment provides:

[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

a child's hearsay statements elicited by suggestive questioning had particularized guarantees of trustworthiness under *Ohio v. Roberts*, 448 U.S. 56 (1980),[3] sufficient to justify their admission over a Confrontation Clause objection where the child had been found incompetent to testify.

In addition, Smith cites the dissent in *People of Territory of Guam v. McGravey*, 14 F.3d 1344,1350 (9th Cir. 1994), by Circuit Judge Stephen R. Reinhart, that reads:

> Children are also more susceptible to manipulation than are adults – particularly by their parents and others in positions of authority or trust. In some cases a molester may use this weakness to his or her advantage and try to keep the truth from coming out. However, in others, the result may be that an innocent person is falsely labelled [sic] a molester. Some of the investigative techniques experts use to bring the facts of child molestation to light can themselves be a source of unreliability if not properly employed. The unfortunate fact is that, because of their greater suggestibility, young children sometimes testify to events that never happened.

(footnote omitted.)

Smith also cites *Janet M. v. Scott R. K.*, No. CN88-8363, 1990 WL 143875 at * 7 - * 8 (Del. Fam. Ct. Aug. 27, 1990), an unpublished opinion expressing the judge's concern that three initial interviews of young children regarding alleged sexual abuse that had been conducted by the DCPS ("Delaware Child Protective Services") were not videotaped or recorded. Additionally, Smith cites the dissent in *State v. Carrizales*, 528 N.W.2d 29, 36 n.3 (Wis. Ct. App. 1993), authored by Judge Robert D. Sundby, citing Jean Montoya, *Something Not So Funny Happened on the Way to Conviction: The Pretrial Interrogation of Child Witnesses*, 35 Ariz. L. Rev. 927, 933 (1993) (maintaining that "[s]ocial science evidence of children's suggestibility

---

[3] *Ohio v. Roberts*, 448 U.S. at 56, was subsequently overruled by *Crawford v. Washington*, 541 U.S. 36 (2004).

indicates that persistent pretrial interrogation of child witnesses can impair the search for truth in litigation," and that "preschool children can be manipulated by interviewers to level false accusations.")

The issue in *Carrizales* was whether requiring the defendant, who had pled no contest to a sexual assault offense, to admit that he committed the sexual assault as a part of his probation violated his right to self incrimination. 528 N.W.2d at 32. The court rejected the claim. *Id.* Smith cites the dissent which, in asserting that the defendant had not violated a condition of his probation because his probation had not been conditioned on his admission of guilt, cites the Arizona law review article and asks, what if the defendant – who had pled no contest – had not committed the second degree-sexual assault of a child? *Carrizales*, 528 N.W.2d at 36 n.3.

Neither *Idaho v. Wright*, the dissent in *McGravey*, *Janet M. v. Scott R. K.*, nor the dissent in *Carrizales* involve a Fourteenth Amendment claim. However, they discuss, to varying degrees, the danger that children may be vulnerable to suggestion when they are interviewed by law enforcement authorities.

### Fair Presentment

The first issue presented by Simmert interview ground is whether Smith properly raised his federal constitutional claim in the state courts. In order to raise a constitutional challenge to a state court conviction and sentence in a federal habeas proceeding, the petitioner must have fully and adequately presented the challenge to the state courts. *Todd*, 283 F.3d at 848

(citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001)). "A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir.1996) (quoting *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir.1984)) (internal quotations omitted). A petitioner accomplishes this task if he presents his claims in a way that "fairly alert[s] the state court to any applicable [federal] constitutional grounds for the claim." *Id.* (quoting *Green v. Peters*, 36 F.3d 602, 605 (7th Cir.1994)) (internal quotations omitted). In other words, "both the operative facts and the controlling legal principles of a constitutional claim must be submitted to the state court." *Id.*

To ensure that Smith properly raised his claim regarding the Simmert interview in the state courts, Smith must have: (1) rel[ied] on pertinent federal cases employing constitutional analysis; (2) rel[ied] on state cases applying constitutional analysis to a similar factual situation; (3) assert[ed] the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege[d] a pattern of facts that is well within the mainstream of constitutional litigation. *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992). Satisfying any of these four factors does not guarantee a finding of fair presentment, however; the Court must consider the specific facts in this case. *Id.* at 1474.

When a petitioner has not properly asserted his federal claims at each level of review and it is clear that the state courts would now hold those claims procedurally barred,

federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored. *See Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

In his state court appeal, Smith contended that Sasha T's description of events changed over time, (Ex. 6 (Appellant's Br.) at 4.), and that counsel was ineffective because he failed to present an expert witness to testify on the issue of suggestive interview techniques used when obtaining information from young witnesses. (*Id.* at 6-7, 16 (citing *State v. Kirschbaum*, 535 N.W. 2d 462, 466-67 (Wis. Ct. App. 1995), 28 (same).) Smith emphasized that Sasha T. used different terminology to describe the assault before and after Simmert interviewed her, (*Id.* at 8-9, 24.), contending that, if his conviction was sustained on the basis of inconsistent and uncorroborated evidence, he would be denied an unprejudiced trial under "due process of the law." (Ex. 6 at 23-24; *See also*, Ex. 8 (Reply Br. of Def./Appellant) 5-9.) He also asserted that "trial counsel also failed to obtain an expert witness to testify on the technical issues and the proper suggestive techniques to be used when gleaning information from young alleged victims and witnesses – he was ineffective in these matters." (Ex. 6 at 27-28.)

Smith's state court appeal brief cited *State v. Owen*, 551 N.W. 2d 50, 54-55 (Wis. Ct. App. 1990)(cited by *State v. Rivers*, 617 N.W. 2d 906 (Wis. Ct. App. 2000) (Table)), which addressed the defendant's contention that there was not sufficient evidence to support his conviction for recklessly causing great bodily harm to a child contrary to Wis. Stat.

§ 948.03(3)(a), because the State had not presented expert testimony that the alleged slap to the chest of a three-month-old child caused great bodily harm. (Ex. 6 at 16.) Noting that expert testimony is required only if the issue to be decided by the trier of fact is beyond the general knowledge and experience of the average juror, *Owen*, 551 N.W.2d at 55 (citing *State v. Whitaker*, 481 N.W.2d 649, 652 (Wis. Ct. App. 1992)), the court held that expert testimony was not required because the trier of fact, based on its common knowledge and experience, could conclude that the slap to child's chest with some degree of force was a substantial factor in producing great bodily harm to the child. *Id.*[4]

Smith also cited *State v. Crowley*, 422 N.W.2d 847, 850 (Wis. 1988)(citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). *Crowley* states that "failure to prove a crime by sufficient evidence is fatally defective because the defendant convicted on such evidence is denied due process of law." (Ex. 6 at 23.) The issue on appeal in *Crowley*, 422 N.W.2d at 849-50, was whether there was sufficient evidence to sustain an aggravated battery conviction because the prosecution had presented alternative methods of proof based on different evidentiary facts to the jury. The appeals court held that in order to sustain Crowley's conviction upon appellate review,

---

[4]Smith also cited *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), as cited by *State v. Moats*, 457 N.W.2d 299, 320 n.3 (Wis. 1990). (Smith cited page 322 of *Moats*; however, because *Loudermill* is cited on page 320, not 322, the Court has corrected the citation.) The *Moats* concurring opinion authored by then Wisconsin Supreme Court Chief Justice Heffernan, which quoted *Loudermill*, did not address whether Moats had been denied a liberty interest without due process of law. *See Moats*, 457 N.W.2d at 320 n.3. Smith also cited *Cornwell Personnel Associates, Ltd. v. Labor and Industry Review Commission*, 499 N.W.2d 705, 707 (Wis. Ct. App. 1993), which addresses the degree of proof required to sustain an administrative commission's findings on judicial review; that is, substantial and credible evidence in the record. The cases do not meet any of the four factors identified in *Verdin*, 972 F.2d at 1473-74, as indicating a fair presentment of the Fourth and Fourteenth Amendment claims Smith now makes as a part of ground one.

the evidence had to be sufficient to convict him beyond a reasonable doubt upon both of the alternative modes of proof. *Id*. at 849.

In its decision on Smith's appeal, the Wisconsin Court of Appeals found that the jury had an opportunity to consider variations in Sasha T.'s narrative. *Smith*, 768 N.W.2d at * 6. The state appellate court also found that, on cross-examination, Smith developed the theory that Simmert should have recorded the investigative interview, and the jury was free to consider whether lack of a recorded interview raised concerns about Sasha T's accusations. *Id*. The appeals court held that it was the role of the jury, not it, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*.

With respect to Smith's Fourth Amendment claim, before the state courts, Smith did not cite any federal or state decision applying the Fourth Amendment to facts similar to those upon which he relies. He also did not assert the claim in terms so particular as to call to mind a specific constitutional right. Nor did he allege a pattern of facts that is well within the mainstream of constitutional litigation.

Smith cited Wisconsin state court decisions that cited two Supreme Court Fourteenth Amendment decisions, *Jackson v. Virginia* and *Loudermill*. However, neither Supreme Court case applies the Fourteenth Amendment to facts similar to those in his case. Additionally, Smith did not rely on state cases applying constitutional analysis to a similar factual situation. While Smith stated that Simmert "suggestively brought up the word 'penis' in his conversation with Sasha T., who could not describe and did not know what a penis was until

14

Simmert used the term; Smith presented the argument as a part of a sufficiency of the evidence argument. (Ex. 6 at 24.) Thus, Smith did not assert the claim in terms so particular as to call to mind a specific constitutional right. Finally, Smith did not allege a pattern of facts that is well within the mainstream of constitutional litigation. *See Verdin*, 972 F.2d at 1473-74.

Thus, the Court concludes that Smith has not met his burden of showing that he presented his challenge to Simmert's testimony in terms of a Fourth or Fourteenth Amendment challenge. *See Byers*, 610 F.3d at 986. Additionally, he has not contended or demonstrated that there was cause and prejudice to excuse his default. *See id.* (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). Nor has he argued that a fundamental miscarriage of justice excuses his default. Therefore, Smith's first ground for relief is procedurally defaulted and does not provide a basis for relief from this Court.

### Smith's Attorney Was Ineffective Because He Failed to Retain an Expert to Present Appropriate Interviewing Techniques and the Consequences of Suggestive Interviews with Child Victims

Smith's second ground for relief is that counsel was ineffective because he failed to retain an expert to present appropriate interviewing techniques and the consequences of suggestive interviews with child victims. Jenkins maintains that Smith is not entitled to relief on his ineffective assistance of counsel claim because the Wisconsin Court of Appeals reasonably applied *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to the facts of his case when it rejected the claim.

In his state court appeal, Smith contended that his trial attorney was ineffective and that the state circuit court erred by failing to hold a hearing on the issue. *Smith*, 768 N.W.2d at * 5. The court of appeals stated that to establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice as a result of the deficiency. *Id*. (citing *Strickland*, 466 U.S. at 687). It further noted that to prove deficient performance, Smith was required to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Smith*, 768 N.W.2d at * 5 (citing *State v. Pote*, 659 N.W.2d 82, 89 (Wis. Ct. App. 2003)) (citation omitted). In addition, the state appellate court stated that to prove prejudice, Smith needed to show "a reasonable probability that, but for counsels [sic] unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (citing *Strickland*, 466 U.S. at 694).

In observing that Smith had to satisfy both the deficiency and the prejudice components of the test to be afforded relief, *id.* (citing *State v. Allen*, 682 N.W.2d 433, 442-43 (Wis. 2004)), the appellate court noted that it could choose to examine either component first, *Pote*, 659 N.W.2d at 88-89, and that if Smith's showing was inadequate on one, it did not need to address the other. *See Smith*, 768 N.W.2d at * 5. The court stated Smith asserted that his counsel performed deficiently by failing to retain an expert to testify regarding the suggestive questioning of children. *Id*. at * 6.

The appellate court indicated that Smith's claim was conclusory and, therefore, insufficient to warrant relief. *See id.* (citing *Allen*, 682 N.W.2d at 439). Specifically, the appeals court noted that Smith had not demonstrated who, if anyone, would have provided expert testimony, what the witness could say, or how that testimony would have assisted Smith's defense. *See id.* (citing *Allen*, 682 N.W.2d at 441). The appeals court also noted that Smith apparently assumed that an expert would be critical of the investigative interview of Sasha T., but nothing in his submissions demonstrated the availability of a witness who would testify that the interview was improper in any way. *Id.* Thus, the court held that Smith had not demonstrated any deficiency in his counsel's failure to retain an expert witness. *Id.*

The Court has carefully reviewed the state court of appeals' decision on Smith's ineffective assistance of counsel claim. The state court identified the correct legal principles and properly applied them to the facts of Smith's case in concluding that Smith had not shown that counsel's performance was deficient. There is no indication that the Wisconsin court of appeals' application of federal law was either incorrect and unreasonable. Thus, Smith's ineffective assistance of counsel claim does not establish that he is entitled to habeas corpus relief.

### Failure to Give Instructions On Lesser Charge

As his third ground for relief, Smith contends that he is being held in violation of the Sixth and Fourteenth Amendments because the jury was not permitted to consider the lesser offense included offense of second degree sexual assault. Construing the claim as an ineffective assistance of counsel claim, Jenkins maintains that Smith is not entitled to relief on the claim

17

because the Wisconsin Court of Appeals reasonably applied *Strickland* to the facts of Smith's case when rejecting that claim. Alternatively, Jenkins contends that, if Smith intends to raise any other constitutional claims involving the lesser included offense instruction, those claims are procedurally defaulted because Smith did not raise them before state courts and he would now be procedurally barred from doing so.

In his reply, Smith asserts that he did raise other constitutional claims before the state court of appeals. Smith refers to his claims of abuse of discretion and prosecutorial misconduct, citing pages 19 and 20 of his initial appellate brief (Ex. 6 at 19-20).

Before the Wisconsin Court of Appeals, Smith contended that the jury should have been instructed on the lesser included offense of second-degree sexual assault as defined in Wis. Stat. § 948.02(2) (2003-04). *Smith*, 768 N.W.2d at * 3. The court of appeals noted under Wisconsin law "[i]f a reasonable view of the evidence can support a guilty verdict beyond a reasonable doubt for both the greater and the lesser included offense, then no lesser included instruction may be given." *Id*. (citing *State v. Moua*, 573 N.W.2d 202, 205 (Wis. Ct. App. 1997)). If, however, a reasonable view of the evidence supports a guilty verdict on the lesser-included offense but casts doubt on an element of the greater offense, both verdicts should be submitted. *Id*. (citing *Moua*, 573 N.W.2d at 205).

The Wisconsin court of appeals noted that the victim of first-degree sexual assault must be under 13 years old for a conviction under Wis. Stat. § 948.02(1)(e) (2003-04) (as affected by 2005 Wis. Act 430). *Id*. at * 4. The victim of a second-degree sexual assault must be under

16 years old for the State to secure a conviction under Wis. Stat. § 948.02(2) (2003-04). *Id*. Both offenses include a second element, which can be satisfied by proof of sexual contact. *Id*. (citing Wis. Stat. §§ 948.02(1)(e) (2003-04) (as affected by 2005 Wis. Act 430) & 948.02(2) (2003-04)). Thus, if the State proved both that the defendant had sexual contact with a child and that the child was under 13 years old, then the State had proved all the elements for both crimes. *Id*. (citing *Moua*, 573 N.W.2d at 206).

The court noted that in Smith's case, the parties did not dispute that Sasha T. was 11 years old at the time of the incident, and that undisputed fact supported a guilty verdict on either the greater or the lesser offense. *Id*. The court also noted that the prosecution presented evidence of sexual contact, which could have sustained a guilty verdict as to either the greater or the lesser offense, whereas Smith argued that the evidence was insufficient to prove sexual contact. *Id*. The court stated that if the jury had accepted Smith's argument, the jury could not have found guilt as to either the greater or the lesser offense. *Id*. Accordingly, the appeals court held that there was no reasonable view of the evidence that cast doubt on an element of the greater offense while also supporting a guilty verdict on the lesser offense and, thus, pursuant to *Moua*, Smith was not entitled to an instruction on a lesser-included offense. *Id*.

As previously stated, this Court cannot review a habeas petitioner's constitutional issue unless he has provided the state courts with an opportunity to resolve it "by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see 28 U.S.C. § 2254(b)(1)(A). A petitioner must fairly present his federal

claims to the state courts by arguing both the law and the facts underlying them. *Byers*, 610 F.3d at 985 (citing *Baldwin v. Reese*, 541 U.S. 27, 29, 32 (2004) (explaining that, to comply with the requirement that the claims assert violations of the federal constitution, the petitioner may simply label his claim "federal" or cite cases that decide the claim on federal grounds); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006)). "[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised." *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (citing *Baldwin* ).

The court of appeals uses four factors to evaluate whether a petitioner has "fairly presented" his claim: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *See White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009). When a petitioner has not properly asserted his federal claims at each level of review and it is clear that the state courts would now hold those claims procedurally barred, federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored. *Byers*, 610 F.3d at 985 (citing *McGee v. Bartow*, 593 F.3d 556, 565 (7th Cir. 2010);

*Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009)). In *Byers*, the court reviewed prior decisions where it found that claims had been fairly presented, and noted that the claims of a *pro se* litigant be construed more liberally than those of a counseled litigant. 610 F.3d at 985.

Review of the cited pages of Smith's opening appellate brief and the cases cited on those pages discloses that Smith did not argue that his right to due process was violated as a result of the denial of the lesser included offense instruction with the state court. However, he cited *United States v. Keeble*, 412 U.S. 205, 208 (1973), which states "it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Smith also argued that the trial court neglected to consider the fact that Smith had a fundamental constitutional due process right to be charged based on the evidence, without his being unduly influenced and coerced to plead to a charge. (Ex. 6 at 20). Based on the foregoing and construing Smith's pro se submissions liberally, this Court concludes that Smith's argument was framed in terms so particular as to call to mind a specific constitutional right. Thus, Smith has not procedurally defaulted the claim.

Under AEDPA, this Court cannot grant habeas relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law. *Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009) (citing 28 U.S.C. § 2254(d); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). As a general rule, "the failure of a state trial court to instruct the jury on a lesser included offense does not implicate a federal constitutional question and will

21

not be considered in a federal habeas corpus proceeding." *Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001)*; see also Gilmore v. Taylor*, 508 U.S. 333, 334 (1993) ("instructional errors of state law generally may not form the basis for federal habeas relief."); *United States ex rel. Waters v. Bensinger*, 507 F.2d 103, 105 (7th Cir. 1974) ("[I]nstructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues.").

"In a habeas action, the question is not whether the failure to instruct on a lesser included offense was correct or incorrect under state law, but rather whether failure to do so constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure." *Reeves*, 272 F.3d at 920. Put another way, to be cognizable on habeas review, Smith must argue that the state court's failure to instruct the jury of a lesser included offense resulted in a conviction that violated his right to due process. *See id.* A trial court does not err in refusing to give an instruction where credible evidence in the record would not support a verdict based on the omitted instruction. *Wilson v. McCaughtry*, 994 F.2d 1228, 1238 (7th Cir. 1993).

Because Smith asserts that the trial court erred in omitting an instruction, his burden is "especially heavy" because "[a]n omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In this case, it was uncontested that Sasha T. was 11 years old at the time of the offense and, therefore, the only contested element was whether Smith had sexual contact with her. In this context, the trial court's decision not to instruct the jury on the lesser included offense of second-

degree sexual assault did not violate Smith's right to due process. If Smith's defense was accepted by the jury, it would have found that he was not guilty of both offenses – if not, then it would have found Smith guilty of both offenses. Therefore, Smith has not established that the court of appeals' decision on the lesser included offense issue was contrary to or an unreasonable application of clearly established federal law. *Johnson*, 574 F.3d at 433.

Based on the foregoing, Smith's petition for a writ of habeas corpus is denied.

### *Certificate of Appealability*

A petitioner may appeal a district court's denial of a writ of habeas corpus only when that petitioner has been issued a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1). To obtain a COA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court dismisses a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, as in the case at bar, the petitioner bears the burden of proving a COA is warranted. In *Slack v. McDaniel*, the United States Supreme Court defined the standard a petitioner must meet as follows:

> [A] COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. 473, 484 (2000). The Supreme Court further noted where a plain procedural bar exists and the district court is right to invoke it to dispose of the case at hand, "a reasonable jurist could

not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

Smith procedurally defaulted his first ground for relief, and has not demonstrated that he is entitled to relief on the state court of appeals' rulings on his ineffective assistance of counsel and trial court's denial of his request for a lesser included offense instruction. As this Court has dismissed ground one of Smith's petition on procedural grounds and denied grounds two and three of their merits, Smith has failed to show that: (1) jurists of reason would find it debatable whether the petition states a valid denial of constitutional rights; and (2) jurists of reason would find it debatable whether the Court was correct in its procedural ruling, a COA is unwarranted. There is nothing to suggest that this Court was incorrect in its procedural ruling. Therefore, a certificate of appealability is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Smith's motion for release on an appeal bond (Docket No. 38) is **DENIED**;

Smith's petition for a writ of habeas corpus is **DENIED**;

The Clerk of Court is **DIRECTED** to enter judgment accordingly; and

This Court **DECLINES TO ISSUE** a COA.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2011.

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Court Judge**